IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| SOUTHSHORE  RESTORE LLC; HEARTLAND GREENS LLC; BLOUNTS & MOORE LLC; LAKESHORE GREENS LLC; THE DOOBIE ROOM LLC; BOTAVI WELLNESS LLC; DEEP EARTH LLC; THE HEALING SOURCE LLC; EMERALD COAST LLC; BIAMED LLC; NORTHLAND DISPENSARY LLC; CANNABISTRO LLC; PGW LLC; EMERALD ISLAND LLC; PRAIRIE GRASS LLC; JG IL LLC; RENU LLC; TC APPLICO LLC; THIRD COAST GREENHOUSE; KAP JG LLC; and CELESTIA LLC; | ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Alonso  Case No. 20 C 5264 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION; BRETT BENDER, DEPUTY DIRECTOR;  and AS-YET UNKNOWN DEFENDANTS, | ) ) ) ) ) | |
| Defendants. | ) | |

## Declaration of Mike Kanovitz

I, Mike Kanovitz, declare under penalty of perjury, that the following is true the best of his knowledge and understanding.

1. I am an attorney residing in the State of Illinois. I have knowledge of the

   Illinois Cannabis Program, and the Plaintiffs dispensary applications in

   this matter.

2. Unlike some states in which there are an unlimited number of dispensary

   licenses, Illinois chose to strictly limit the number of available licenses. That

EXHIBIT 1

limitation has made these licenses extremely valuable. In the past year, according to reports, some owners of existing licenses have sold single dispensaries for more than $20 million.

3. In 2019, the General Assembly passed a law, creating rights to up to 60 new "Early Approval" secondary site dispensary licenses. 410 ILCS 705/15-15. The law provides that the only people eligible to win the new Early Approval dispensary licenses are the set of people who already owned companies holding existing dispensary licenses. Based on publically available data, it appears that the only companies with existing dispensary licenses are majority-owned by white males and that none or close to none are majority-owned by women or by minorities.

4. There was considerable outcry over the decision to award the next 60 dispensary licenses to the same people who already owned the existing dispensaries; one of the criticisms was that this effectively shut out of the cannabis industry many business owners and entrepreneurs from disadvantaged communities most effected by the War on Drugs. My law partner and I were personally involved in meetings and other communications where members of the community expressed extreme dissatisfaction about the unfairness in this process.

5. In 2019, the Department announced a process to award 75 Adult Use Licenses. Companies could apply and would be graded on various measures, with up to 252 total points. According to press reports the Department

EXHIBIT 1

selected KPMG to grade the applications via a no bid contract.

6. According to the Department's FAQs, many of the measures on which applicants were to be evaluated were designated to be graded via binary scoring, *i.e.*, pass/fail: the applicant either got all of the points, or did not. Among the measures that were designated pass/fail are the applicant's experience, diversity plan, social equity and veteran status, and community plan. By making the scoring on these key measures check-the-box, the Department created a contest where applicants could not distinguish themselves from the pack based on their diversity or community ties. The implication of such a scoring system is that many, if not most, applicants would receive the maximum (*i.e.*, tie) scores.

7. Members of communities in need of economic development were encouraged to apply for dispensary licenses. Many did. It is my understanding that some spending a year or more preparing for a chance to participate. My law partner and I personally interacted with a number of such people, and assisted many. According to news accounts, numerous teams owned by Social Equity Applicants invested considerable sums of hard-earned money in the process, sometimes their entire life savings. We knew people who did the same.

8. I have considerable familiarity with licensing contests for cannabis dispensaries in contests around the country, having personally participate in many. Unlike almost every graded competition for cannabis licenses, the

EXHIBIT 1

recent one in Illinois did not control for political influence or bias by scoring anonymously. The vast majority of states that conduct competitions to award cannabis licenses (including the original rounds in Illinois for medical cannabis) do so via a process that requires applicants to redact all references to the names and affiliations of their principals for grading purposes.

9. This competition was not graded anonymously. The application and the FAQs were clear that the Exhibits that would allow KPMG to identify the principal officers of each applicant were to include all personal identifying information.

10. According to his web bio, Bob Morgan was one of the primary architects who created not only the Program itself, but the original "selection process for licensed dispensary facilities."

11. At least one Tied Applicant lists as a Manager a person identified on LinkedIn as a risk consultant for KMPG, the contractor that decided (not anonymously) which very few companies would participate in the Lottery.

12. In my estimation, each of the Plaintiffs should have qualified to be a Tied Applicant. Each Plaintiff was majority-owned by Social Equity Applicants, and each Plaintiff is qualified to operate a dispensary business. Plaintiffs submitted applications that should have received all of the available points.

13. The score attributed to JG IL is obviously wrong. First, JG IL submitted identical applications in all of the 75 regions, but several of the scores it received on certain measures differed based on the region of application

EXHIBIT 1

when the submissions were identical. For example, JG IL received 16 out of 16 possible points for most of its recall plans (a/k/a "Exhibit G" to the application) but only a 14 out of 16 on the identical recall plan in the Rock Island Region. In other words, identical application plans, different scores.

14. JG IL received zero points out of a possible 5 points for being majority-owned by Illinois residents. JG IL is majority-owned by Illinois residents, and it submitted all of the required proof with its application in the form specified by the Department.

15. JG IL also received zero points out of a possible 5 points for being majority owned by military veterans and for having Social Equity Status. These are also incorrect. JG IL is majority-owned by military veterans and was a Social Equity Applicant, and it submitted all of the required proof with its application in the form specified by the Department.

16. The dispensary application states on its face:

> If the Division receives an application that is **deficient in any respect**, the Division will issue a deficiency notice via e-mail to the primary and alternate contacts identified on the application form. The applicant will have 10 calendar days from the date the deficiency notice is sent to submit the information requested. If the applicant does not provide all required information necessary to make its application complete within the allotted time, the application will be rejected and not considered for a license, and the application fee will not be returned.

17. Plaintiffs received no deficiency notification from the Department regarding any problems with its floor plan. Instead, the first time Plaintiff JG IL learned that the Department had any problem with Exhibit J to its application was when it received a less than perfect score, thereby excluding

EXHIBIT 1

it from the Lottery.

18. The Emergency Rules provide that there is no administrative review for applicants who did not receive a tied score.  68 Ill. Adm. Code 1291.10.

19. The newspaper articles attached to the Memorandum in support of preliminary injunction are true and accurate copies, drawn from the internet.

20. The emails from our law firm attached to the Memorandum in support of preliminary injunction are true and accurate copies.


I declare under penalty of perjury that the foregoing is true and correct.


/s/ Michael Kanovitz

Dated: September 7, 2020

EXHIBIT 1