Case: 1:20-cv-05264 Document #: 4-8 Filed: 09/08/20 Page 1 of 2 PageID #:100

LEGAL

# Recreational cannabis: Illinois strives for social equity

Only a limited number of new licenses will be granted in 2020

On January 1, 2020, Illinois became the 11th state to legalize the recreational use of cannabis. According to the Chicago Sun-Times, more than 495,000 transactions occurred in the first 12 days of recreational sales, resulting in nearly $20 million in sales. With such a positive reaction to the new, emerging market, many entrepreneurs will try to enter the industry by applying for one or more licenses to grow, sell or transport cannabis, or to produce cannabis-infused products.+

By Jonathan Sherman, Brian Crump and Madison Schmid
February 10, 2020



*Abraham Lincoln statue in front of the Illinois State Capital Building in Springfield, Illinois*

EXHIBIT 8

However, only 75 new dispensary licenses, 40 infuser licenses and 40 craft grower licenses will be issued in the first round of applications in 2020. Prospective licensees, ranging from individuals to large multi-state corporations, will submit thousands of applications for those licenses. Given the limited supply of licenses, applicants can expect to face strong competition and intense scrutiny by regulators. In addition, the application process itself is extensive, requiring each applicant to submit a wide range of information about principal officers, employee training procedures, environmental considerations, proposed locations, security plans and more. But the most unique component of the application process is the state's explicit focus on diversity and social justice in its decision-making process.

> This article originally appeared in the March 2020 issue of Marijuana Venture, © 2020 Marijuana Venture.

The Illinois Legislature recognized that in the past, a significant portion of its residents were disproportionately affected by laws criminalizing the possession and use of cannabis. When the decision was made to legalize cannabis for recreational use, legislators designed the law in a way that was intended to benefit those who were adversely affected by prior laws. As part of the application process, applicants are required to submit a diversity plan designed to promote equal opportunities among their employees. Applicants must also provide a community reinvestment plan that highlights how the business would use its profits to build and support its community. Applicants that qualify as "social equity applicants" receive a significant advantage over those applicants who do not.

The dispensary application, for example, is based on a 250-point scoring system with several components, with each component allocated a certain number of points. Of the available points, 50 points are awarded to for those qualifying as a social equity applicant. To qualify for this status, an applicant must meet at least one of three qualifications: (a) an entity that is at least 51% owned and controlled by one or more individuals who have lived in a "disproportionally impacted area" for five of the last 10 years; (b) an entity that is at least 51% owned and controlled by one or more individuals that have been arrested for, or convicted of, any offense that became eligible for expungement under the new law; or (c) an entity that has 10 or more full-time employees, at least 51% of which meet one of the first two criteria.

(Most states' social equity programs are based on race. In Illinois, however, race is not technically considered as part of social equity status, but practically speaking, the designated "disproportionally impacted areas" largely cover communities of color as those historically have been the most adversely impacted by prior laws. That said, anyone that can prove they lived in any of these designated areas can qualify regardless of race.)

The new law offers significant financial benefits exclusively for social equity applicants, including reduced application and license fees and exclusive access to low-interest loan programs. These financial benefits are intended to reduce barriers of entry and make capital available to applicants who may otherwise not have the financial resources to break into the cannabis market. The Department of Financial and Professional Regulation reported that approximately 600 of the 700 applications submitted for new dispensary licenses self-identified as social equity applicants.

Though the legalization of cannabis has gained traction nationally, states across the country have been criticized for creating programs that allow big business to profit from the sale of cannabis products while creating barriers for people and communities that were adversely affected by prior laws. In response, Illinois Governor J.B. Pritzker and legislative leaders addressed these concerns by championing legislation that incorporates social goals and benefits, provides for expungement of an estimated 770,000 criminal records related to cannabis offenses and supports economic development, violence prevention services and youth development efforts through the Restore, Reinvest and Renew Program (R3).

With one of the most socially progressive programs in the country, Illinois now has a holistic program that seeks to correct past injustices while promoting diversity and opportunity in the growing cannabis marketplace.

*Jonathan D. Sherman is a trusted legal advisor in the cannabis law group at Chicago-based firm Much Shelist. He has more than 30 years of experience as a business attorney and litigator, counseling publicly traded and privately owned companies in numerous industries.*

*Brian J. Crump, also from Much's cannabis law group, advises clients on business, venture and financing transactions while spending significant time working with startup and early-stage companies and draws on his background in finance, management and real estate.*

EXHIBIT 8